### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| **BRITTNEY L. THOMAS,** | : | **Case No.** |
| *On behalf of herself and other similarly* | | |
| *situated participants*, | : | |
| | | |
| **and** | : | **Judge** |
| | | |
| **TAMMY M. BELTZ,** | : | |
| *On behalf of herself and other similarly* | | |
| *situated participants,* | : | |
| | | |
| **and** | : | |
| | | |
| **CHERYL A. THOMPSON,** | : | |
| *On behalf of herself and other similarly* | | |
| *situated participants,* | : | |
| | | |
| **Plaintiffs,** | : | |
| | | |
| **v.** | : | |
| | | |
| **PARAGON FAMILY PRACTICE,** | : | |
| | | |
| **and** | : | |
| | | |
| **HORIZON HEALTHCARE CENTER,** | : | |
| **LLC,** | | |
| | : | |
| **and** | | |
| | : | |
| **RESOURCES IN HEALTHCARE** | | |
| **MANAGEMENT, LLC,** | : | |
| | | |
| **and** | : | |
| | | |
| **MADISON PRIMARY CARE LLC,** | : | |
| | | |
| **and** | : | |
| | | |
| **JOHN DOE CORPORATE** | : | |
| **DEFENDANTS 1-50,** | | |
| | : | |

**and**                                            :

**ANN GILES,**                                     :

**and**                                            :

**LU ANNE WALLACE,**                               :

**Defendants.**                                    :

**SERVE:**                                         :
**Thomas E. Perez**
**Secretary of Labor**
**U.S. Department of Labor**                        :
**200 Constitution Ave., NW**
**Washington, DC 20210**                            :

**Jacob J. Lew**                                   :
**Secretary of the Treasury**
**Department of the Treasury**                       :
**1500 Pennsylvania Avenue, NW**
**Washington, D.C. 20220**                           :

---

## COMPLAINT

Plaintiffs Brittney L. Thomas, Tammy M. Beltz, and Cheryl A. Thompson("Class Representatives"), on behalf of themselves and all other similarly situated persons in the proposed Class described in this Complaint, bring this action against Defendants Paragon Family Practice, Horizon Healthcare Center, LLC, Resources in Healthcare Management, LLC, Madison Primary Care LLC, and all related entities, inclusive of John Doe Corporate Defendants 1-50, and against their owners or officers Ann Giles and Lu Anne Wallace and allege as follows:

## NATURE OF ACTION AND SUMMARY OF CLAIMS

1. This case is brought as a class action by the Class Representatives on behalf of themselves and a class of similarly situated employees of the corporate Defendants, and

the dependents of those employees who participate in the Defendants' health care plan ("Class Members"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.  Plaintiff Brittney Thomas, like other similarly situated employees, is a participant in a health plan sponsored by her employer, Paragon Family Practice, in Lexington, Kentucky.  Ex. B, ¶1 (Thomas Declaration).  In mid-July 2013, after Thomas had incurred substantial medical bills for treatment of her chronic Crohn's Disease, she discovered that health coverage under the health care plan sponsored by her employer had been terminated on April 30, with no notice to Thomas.  Ex. B, ¶15-16.  Dental and vision coverage were terminated as well.  Ex. B, ¶13.  Despite Paragon Family Practice's repeated assurances, coverage has not been reinstated.  Ex. B, ¶14.

3.  Plaintiff Cheryl A. Thompson, like other similarly situated employees, is a participant in a health plan sponsored by her employer, Madison Primary Care LLC, a corporate entity associated with Paragon Family Practice.  Madison Primary Care is located in Richmond, Kentucky.  In mid-July 2013, after Thompson had incurred thousands of dollars in bills for testing related to a heart condition, she learned that health coverage under the Plan had been terminated on April 30, with no notice to Thompson.  Ex. D, ¶¶6, 8 (Thompson Declaration).  Despite Madison Primary Care's repeated assurances, coverage has not been reinstated.  Worse yet, Madison Primary Care has continued to deduct an employee contribution for health care from Thompson's bi-weekly paycheck, even though the Plan's coverage was terminated over three months ago.  Ex. D, ¶5.

4.  Plaintiff Tammy M. Beltz, like other similarly situated employees, is a participant in a health plan sponsored by her employer, Madison Primary Care LLC.  Ex. C, ¶1 (Beltz Declaration).  Beltz is a breast cancer survivor, and she required substantial medical care

this summer, including a biopsy of her breast. After incurring nearly $10,000 in medical expenses, she learned that the health coverage under the Plan had been terminated on April 30, with no notice to her. Ex. C, ¶5. Despite Madison Primary Care's repeated assurances, coverage has not been reinstated. Worse yet, Madison Primary Care has continued to deduct an employee contribution for health care from Beltz's bi-weekly paycheck, even though the Plan's coverage was terminated over three months ago. Ex. C, ¶3.

5. Beltz also participates in an IRS Section 401(k) retirement savings plan sponsored by her employer, Madison Primary Care. Ex. C, ¶7. Beltz defers approximately $40.00 of each bi-weekly paycheck to be contributed to her 401(k) account. Ex. C, ¶10. On August 5, 2013, Beltz learned that Madison Primary Care has failed to forward her employee deferrals of her compensation into her retirement plan since at least April 2013, if not earlier. Ex. C, ¶9.

6. Plaintiffs Thomas, Beltz, and Thompson bring claims for breaches of fiduciary duty and prohibited transactions under ERISA against Paragon Family Practice, Horizon Healthcare Center, LLC, Resources in Healthcare Management, LLC, Madison Primary Care LLC, and all related entities, and against their owners or officers Ann Giles and Lu Anne Wallace. Plaintiffs seek reinstatement of their wrongfully terminated benefits, and seek to be made whole for all losses incurred and benefits due based on the termination of Plan coverage without notice, and the failure to remit 401(k) contributions.

7. In addition to the corporate Defendants identified with particularity, Plaintiffs allege all claims against Corporate John Doe Defendants 1-50, with address and names unknown. Investigation of the claims alleged in this action demonstrates a web of related entities

that cannot readily be untangled.  Giles and Wallace are officers or owners of numerous health care related companies, as demonstrated by substantial information available through the Kentucky Secretary of State.  Many of the corporate entities related to the named corporate Defendants appear to be operating out of offices on Wellington Way in Lexington.  See Ex. A.  Plaintiffs have been paid by numerous corporate entities during the course of 2013, demonstrating the interrelated nature of companies owned or managed by Giles and Wallace.  See Ex. B, ¶3 (Thomas Declaration), Ex. C, ¶2 (Beltz Declaration), and Ex. D, ¶2 (Thompson Declaration).  All corporate Defendants have operated as a single entity, or as a joint employer of Plaintiffs and members of the class, or as alter-egos of Paragon, and/or have failed to properly observe the corporate form as required under applicable Kentucky law.

8.  Plaintiffs bring these claims under §§ 502(a)(1)(B) and 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(1)(B) and (a)(2), pursuant to § 409 of ERISA, 29 U.S.C. § 1109, with respect to fiduciary breaches, and under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), with respect to Defendants' prohibited transactions and the injunctive relief sought herein.  Plaintiffs seek to pierce the corporate veil with respect to the multiple corporate entities as may be required to effectuate just, proper, and equitable relief under the circumstances of this case.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction of this action under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

10. Venue is proper in this district as the actions of defendants took place at the Defendants' locations within Lexington, Kentucky and at offices in counties surrounding Lexington. Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

## PARTIES AND FACTUAL ALLEGATIONS

11. Plaintiff Brittney Thomas is currently an employee of Paragon Family Practice.  She works out of offices in Lexington, Kentucky.  Ex. B, ¶1.  During 2013, she has received paychecks from Resources in Healthcare Management, LLC and Horizon Healthcare Center, LLC.  Ex. B, ¶2.

12. On information and belief, Paragon or one of its related corporate entities is the fiduciary and plan sponsor for the health benefits plan ("Health Plan") offered to its employees and in which the named Plaintiffs participate.

13. The Health Plan is an employee welfare benefit plan within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1), in that it has been established and maintained by an employer to provide participants and their beneficiaries medical, surgical, and hospital care and benefits.  The Health Plan is insured through Humana.

14. On information and belief, Paragon or one of its related corporate entities is the fiduciary and plan sponsor for the 401(k) Retirement Savings Plan ("401(k) Plan") which is offered to its employees and in which Plaintiff Beltz and other employees participate.The 401(k) Plan is administered by Edward Jones.  Ex. C, ¶¶7-10.

15. Defendant Ann Giles is a Member of Defendant companies, and upon information and belief, is the primary executive officer for the Defendant companies.  See Ex. A. On information and belief, Giles has exercised discretionary authority and control with respect to management of the Health Plan and 401(k) Plans, and has exercised authority

and control with respect to the management and disposition of employee contributions to the Plan, which constitute plan assets.  Giles functioned as a fiduciary with respect to the Plan as defined in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  In her role as fiduciary, Giles had, among other fiduciary duties, a duty to monitor the actions of other fiduciaries.

16. Defendant Lu Anne Wallace is a Member of Defendant companies, and upon information and belief, is the Chief Financial Officer of the related Defendants. See Ex. A.  Wallace signs the paychecks of the Plaintiffs.  On information and belief, Wallace has exercised discretionary authority and control with respect to management of the Health Plan and 401(k) Plans, and has exercised authority and control with respect to the management and disposition of employee contributions to the Plans, which constitute plan assets.  Wallace functioned as a fiduciary with respect to the Plan as defined in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).   In her role as fiduciary, Wallace had a duty, among other fiduciary duties, to monitor the actions of other fiduciaries.

17. Thomas has been a Health Plan "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7), from 2008 to present.  Ex. B, ¶1-2.  Thompson and Beltz have been Health Plan participants since 2011.  Ex. C, ¶1; Ex. D, ¶1.

18. Beltz has been a participant in the 401(k) Plan since 2011, and is a "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).  Ex. C, ¶7.

19. In July 2013, Plaintiffs learned that their health benefits were no longer in place.  In mid-July, the Plan's insurer, Humana, provided the Plaintiffs with notice that their coverage had been terminated on April 30, 2013 for lack of payment.  See Ex. B-3.  Defendants never advised Plaintiffs that Health Care coverage was terminated.  Defendants failed to provide notice of cancellation of coverage in advance of termination. Federal regulations

requires plan participants be notified by the plan administrator 60 days prior to any material change to a group health plan. 26 CFR 54.9815-2715(b).

20. Defendants have continued to accept contributions for Health Care coverage from Plaintiffs Beltz and Thompson subsequent to termination of that coverage as of April 30, 2013. Ex. C, ¶3 and Ex. D, ¶5. The requirements for payment of health care contributions varied according to an employee's position, length of tenure, and terms of employment.

21. Beltz has received no formal notice informing her that her 401(k) contributions have not been remitted. A June 2013 statement from 401(k) plan administrator Edward Jones demonstrates that *no contributions have been made* to Beltz's account since at least April 2013, if not earlier, in spite of her $40.00, bi-weekly deferral. Ex. C-5.

22. Beltz has continued to defer approximately $40 per pay period to her 401(k) account. Ex. C, ¶10.

23. Defendants and Health Plan and 401(k) Plan Fiduciaries Giles and Wallace have determined not to remit employee contributions to the Plans, and instead either diverted those payments to the general assets of Defendants or directed those contributions for uses other than the sole and exclusive purpose of providing benefits to participants and beneficiaries under the Plans.

24. Contributions to the Plans deducted from employee paychecks become assets of the Plans as soon as they can reasonably be segregated from general assets of Defendants. 29 C.F.R. § 2510.3-102.

25. After learning of the termination in coverage from Humana, Thomas attempted to contact Lu Anne Wallace. While at Wallace's office, she encountered CeCe Gorman, a corporate official, who directed Thomas to take the rest of the day off. Ex. B, ¶9.

26. Later that day, Thomas spoke with Human Resources Director Terra Elliot who told her not to panic. Ex. B, ¶10.

27. Corporate agents have repeatedly assured Thomas that she would be taken care of, and that coverage would be reinstated. Ex. B, ¶15.

28. As time continued without reinstatement, corporate agents of Defendants sometimes provided Thomas with cash to cover the cost of medications, which she could not do without, and sometimes provided her with the necessary medication itself. Ex. B, ¶¶11,12,14. Because of the nature of Thomas's Crohn's Disease, a failure to obtain necessary medication can induce immediate and serious consequences in Thomas's health. Ex. B, ¶22.

29. Thomas has expressed to her employer the extraordinary stress the termination of coverage has caused her, and has been told that the situation will improve. Ex. B, ¶14-15.

30. Despite assurances that the Health Plan would be reinstated, and that it would be reinstated on August 1 at the latest, web inquiries via Humana's participant web site indicate that Defendants have not reinstated or provided alternate coverage. See Ex. C-3, (Beltz Declaration, Ex. C).

31. Thomas has received explanations of benefits from Humana that indicate coverage has been denied for all claims in May, June, and July, but she has not yet received all the bills

related to the services she received.  She does not yet know the total of her outstanding medical bills.  Ex. B, ¶18.

32. At least one care provider has accused Thomas of medical fraud for submitting that she had insurance during the time in which her coverage had lapsed and she remained unaware of the termination of coverage.  Ex. B, ¶21.

33. Thomas has no other coverage available and no ability to pay her outstanding medical bills.  Ex. B, ¶23.

34. Beltz had a breast biopsy and related services while she was unaware that her Health Plan coverage had been terminated.  Thus far, she has received bills for nearly $10,000 in medical services that she would not have incurred if not for the termination of the Health Plan.  Ex. C, ¶5.  Beltz has no other coverage available and no ability to pay her outstanding medical bills.  Ex. C, ¶6.

35. Thompson had substantial testing related to a heart condition while she was unaware that her Health Plan coverage had been terminated.   Thus far, she anticipates that her medical bills will be near $5,000, and she would not have incurred these expenses but for the termination of the plan.  Ex. D, ¶8.  Thompson has no other coverage available and no ability to pay her outstanding medical bills.  Ex. D, ¶9.

36. In the past, Thompson has received medical care at the clinic in which she works, Madison Primary Care.  Since the termination of Thompson's group health coverage through the Health Plan, her own employer, Madison Primary Care, has refused to provide laboratory services that she needed because of her lack of insurance coverage.  Ex. D, ¶11.

37. Without the Health Plan's coverage, Plaintiffs are put in the horrible position of being forced to forgo necessary medical treatment.  Ex. B, ¶¶11,12,14,18-21; Ex. C, ¶5-6; Ex. D, ¶9-10.

## CLASS ACTION ALLEGATIONS

38. Class Representatives bring this class action on behalf of themselves and two Plaintiff classes, defined as:

   a. **Class 1**:  All employees of Paragon Family Practice, Horizon Healthcare Center, LLC, Resources in Healthcare Management, LLC, Madison Primary Care LLC, and all related entities, inclusive of John Doe Corporate Defendants 1-50, and dependents of those employees, who participated in the Health Plan offered by Defendants, and whose coverage has been terminated without lawful notice.

   b. **Class 2**:  All employees of Paragon Family Practice, Horizon Healthcare Center, LLC, Resources in Healthcare Management, LLC, Madison Primary Care LLC, and all related entities, inclusive of John Doe Corporate Defendants 1-50, who participated In the 401(k) Plan offered by Defendants, and whose salary deferrals have not been remitted to the 401k plan as required.

39. The exact number of Class Members is not presently known, but, on information and belief, is in excess of 300.  The class is so numerous that joinder of all members is impracticable.

40. Those who are members of Class 1 are not necessarily members of Class 2, and vice versa.  While the Classes have overlap, they are not identical.

41. Upon information and belief, the health care benefits to which Class Members are entitled are all identical and were all provided through an insurer, Humana.

42. The number of Class Members participating in the 401(k) Plan is currently unknown, but is believed to be so numerous that joinder of all members is impracticable.  The 401(k) Plan is believed to have fewer participants than the Health Plan.

43. Upon information and belief, all participants in the 401(k) Plan participated in an identical plan, which was offered through plan administrator Edward Jones.

44. There are common questions of law and fact that relate to, affect, and which are common to the Class Members.  These include without limitation:  (1) whether, in failing to forward employee contributions to the respective benefit Plans, Defendants breached their fiduciary duties owed to Class Members under ERISA and the Plans; (2) whether, in failing to provide notice of termination of Health Plan coverage to participants, Defendants breached their fiduciary duties owed to Class Members under ERISA; (3) whether, in failing to provide notice of non-remittance of deferrals of pay to the 401(k) Plan while continuing to collect bi-weekly deferrals, Defendants breached their fiduciary duties owed to Class Members under ERISA; (4) whether the Defendants' diversion of employee contributions intended for the Health Plan and the 401(k) Plan to the general accounts of Defendants or to other corporate or personal uses, breached Defendants' fiduciary duties, and constitute prohibited transactions;

45.  The relief sought is common to all members of the Class to which employees belong. While the two Classes have overlap, members of the Health Plan Class may also be members of the 401(k) Plan Class, and vice-versa.

46. The claims of the Class Representatives are typical of the claims of the respective Classes in that: all Class Members assert that Defendants are obligated under ERISA to forward contributions for employee benefits to those respective Plans; Defendants have violated

ERISA in failing to forward or as required remit contributions and/or deferrals; and, Defendants have terminated Health Plan coverage without notice. No conflict exists between any Class Representative and other members of the Class with respect to this action.

47.  The Class Representatives are able to, and will, fairly and adequately protect the interests of the Classes.  The attorneys for the Class Representatives are experienced and capable in the field of employee benefits law, and have successfully prosecuted class actions, and actions of a similar nature.

48. This action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(2), in that defendants have acted on grounds generally applicable to the Class by terminating health care benefits for Class Members and failing to forward employee contributions and/or deferrals to the respective Plans, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class(es) as a whole.

49. This action may, in addition or in the alternative, be maintained pursuant to FED. R. CIV. P. 23(b)(1) as the prosecution of individual actions by Class Members addressing the subject matter of this action would present the risk of inconsistent or varying adjudications which would potentially establish incompatible standards of conduct governing Defendants or which as a practical matter be dispositive of non-party Class Members or otherwise substantially impair or impede their ability to protect their interests.

### FIRST CLAIM FOR RELIEF
(Breaches of Fiduciary Duties Owed to the Health Plan)

50. Plaintiffs incorporate all foregoing paragraphs as if fully restated herein.

51. As fiduciaries to the Health Plan, Defendants owed fiduciary duties to the Health Plan and its Participants, as set forth in §§ 404, 405, 406, and 408 of ERISA, 29 U.S. §§ 1104, 1105, 1106, and 1108.

52. Defendants grossly and deliberately breached their fiduciary duties by their failure to remit deducted employee contributions to the Health Plan, and diverting those plan assets to other corporate and/or personal purposes.  In so doing, Defendants failed to discharge their fiduciary duties solely in the interest of the participants and beneficiaries of the Health Plan, for the exclusive purpose of providing benefits to the participants and beneficiaries of the Health Plan, and in accordance with the documents and instruments governing the Health Plan, all in violation of § 404(a)(1) of ERISA, 29 U.S. § 1104(a)(1).

53. Defendants further failed to discharge their fiduciary duties with respect to the Health Plan by failing to disclose to employees the non-payment of employee contributions, and to provide notice to participants of the cessation of coverage in the Health Plan, in violation of 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), and regulations found at 26 CFR 54.9815-2715(b).

54. By the acts, errors, and omissions described herein, Defendants have breached their fiduciary duties with respect to the Health Plan.  Pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109, Giles and Wallace are personally liability to make whole the Health Plan and its participants for all losses resulting from their breaches.

## SECOND CLAIM FOR RELIEF
### (Breaches of Fiduciary Duties Owed to the 401(k) Plan)

55. Plaintiffs incorporate all foregoing paragraphs as if fully restated herein.

56. As fiduciaries to the 401(k) Plan, Defendants owed fiduciary duties to the 401(k) Plan and its Participants, as set forth in §§ 404, 405, 406, and 408 of ERISA, 29 U.S. § 1104, 1105, 1106, and 1108.

57. Defendants grossly and deliberately breached their fiduciary duties by their failure to remit deducted employee contributions to the 401(k) Plan, and diverting those plan assets to other corporate and/or personal purposes, in violation of ERISA and 29 C.F.R. § 2510.3-102.

58. In so doing, Defendants failed to discharge their fiduciary duties solely in the interest of the participants and beneficiaries of the 401(k) Plan, for the exclusive purpose of providing benefits to the participants and beneficiaries of the 401(k) Plan, and in accordance with the documents and instruments governing the 401(k) Plan, all in violation of § 404(a)(1) of ERISA, 29 U.S. § 1104(a)(1), and regulations found at 29 C.F.R. § 2510.3-102.

59. Defendants further failed to discharge their fiduciary duties with respect to the 401(k) Plan by failing to disclose to employees the non-payment of employee contributions, in violation of 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

60. By the acts, errors, and omissions described herein, Defendants have breached their fiduciary duties with respect to the 401(k) Plan.  Pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109, Giles and Wallace are personally liability to make whole the 401(k) Plan and its participants for all losses resulting from their breaches.

**THIRD CLAIM FOR RELIEF**
(Prohibited Transactions under ERISA relating to the Health Plan)

61. Plaintiffs incorporate all foregoing paragraphs as if fully restated herein.

62. Defendants, as Plan Sponsor and fiduciaries to the Health Plan, are parties in interest to the Health Plan as defined in ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

63. By diverting, or permitting or allowing diversion of, employee contributions to the Health Plan to corporate and/or personal purposes, Defendants dealt with the assets of the Health Plan in their own interests, or for their own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).  By this conduct, Defendants engaged in prohibited transactions under ERISA.

## FOURTH CLAIM FOR RELIEF
(Prohibited Transactions under ERISA relating to the 401(k) Plan)

64. Plaintiffs incorporate all foregoing paragraphs as if fully restated herein.

65. Defendants, as Plan Sponsor and fiduciaries to the 401(k) Plan, are parties in interest to the 401(k) Plan as defined in ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

66. By diverting, or permitting or allowing diversion of, employee contributions to the 401(k) Plan to corporate and/or personal purposes, Defendants dealt with the assets of the Health Plan in their own interests, or for their own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).  By this conduct, Defendants engaged in prohibited transactions under ERISA.

## FIFTH CLAIM FOR RELIEF
(Injunctive Relief Pursuant to ERISA)

67. Plaintiffs incorporate all foregoing paragraphs as if fully restated herein.

68. Plaintiffs seek immediate injunctive relief to prevent Defendants from engaging in further illegal conduct as set forth in this Complaint.

69. Plaintiffs specifically seek an order from the Court directing Defendants to remit contributions to the Health Plan in sufficient amount that health coverage under the Plan will be immediately reinstated, retroactive to April 30, 2013, the date coverage was improperly and illegally terminated; and further directing Defendants to remit contributions to the 401(k) Plan in sufficient amount to make Participants whole for all unremitted contributions and the related growth of invested Plan assets, pursuant to §502(a)(1)(B) of ERISA.

70. Plaintiffs have suffered, and will continue to suffer irreparable injury to themselves and their families in the absence of the issuance of the injunctive relief sought here.

71. Plaintiffs have no adequate remedy at law.

72. Plaintiffs have exhausted, or are excused from exhausting, any administrative or internal remedies available under the Plans. In the context of this Complaint, any attempt to exhaust would be futile.

73. Plaintiffs have a substantial likelihood of success on the merits of their claims, and are entitled to appropriate injunctive and other equitable relief.

## PRAYER FOR RELIEF

74. For all the foregoing reasons, Plaintiffs request the following relief to be awarded by the Court:

   a. An Order directing Defendants to immediately remit contributions to the Health Plan in sufficient amount such that health coverage under the Plan will be reinstated, retroactive to the date of illegal and improper termination of coverage;

b.   An Order directing Defendants to immediately remit contributions to the 401(k) Plan in sufficient amount to make whole the retirement savings accounts of 401(k) Plan participants, inclusive of lost interest and/or earnings;

c.   A declaration that the Defendant Corporations, and Giles and Wallace in their personal capacities, are jointly and severally liable to make whole the Health Plan and 401(k) Plan and their participants for all losses resulting from each breach of fiduciary duty pursuant to § 409(a) of ERISA, 29 U.S.C. § 1109(a);

d.   An Order directing an accounting of all amounts deducted from employees' pay but not contributed to the Health Plan; of all employee deferrals for the 401(k) Plan and not remitted as required; and, all amounts diverted from the respective Plans' assets, and an accounting of all losses suffered by the Health and 401(k) Plans and their participants as a result of Defendants' breaches of fiduciary duty, with costs of the accounting to be paid by Defendants;

e.   An Order directing Defendants to pay to the Health and 401(k) Plans, on behalf of the named Plaintiffs and each individual Plan participant, all amounts required to recover the losses suffered by the Health Plan and 401(k) Plan and their participants as a result of Defendants' breaches of fiduciary duties;

f.   An Order barring Giles and Wallace from any and all future service as fiduciaries to the Health Plan and 401(k) Plan, pursuant to ERISA § 409(a), 209 U.S.C. § 1109(a);

g.   An Order directing disgorgement of all ill-gotten gains by Defendants, including all employee benefit contributions not remitted to the relevant Plans;

h.  An Order directing that corporate veils may be pierced, as necessary, between the interrelated corporate defendants to properly effectuate a just remedy;

i.  An award of all costs and attorneys' fees incurred in the investigation, initiation, and prosecution of the claims in this action; and

j.  Such other and further relief as the Court may deem equitable and just under the circumstances.

Dated:  August 9, 2012

Respectfully submitted,

s/ E. Douglas Richards
E. Douglas Richards
E. Douglas Richards, PSC
619 Cooper Drive
Lexington, KY 40502
859-269-1974
edrichards714@yahoo.com
ATTORNEY FOR PLAINTIFFS

s/  Jennie G. Arnold
David M. Cook (0023469)
Jennie G. Arnold (0084697)
Claire W. Bushorn (0087167)
Cook & Logothetis, LLC
22 West 9th Street
Cincinnati, Ohio 45202
Phone: (513) 721-0444
Fax: (513) 721-1178
dcook@econjustice.com
jarnold@econjustice.com
cbushorn@econjustice.com
ATTORNEYS FOR PLAINTIFFS